**UNITED STATES of America, Appellee,**

v.

**Richard CIANSCEWSKI, Appellant.**

**No. 89–1160.**

United States Court of Appeals, Third Circuit.

Argued July 10, 1989.

Decided Jan. 18, 1990.

Steven A. Morley (argued), Morley &
Farber, Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., Walter S.
Batty, Jr., Asst. U.S. Atty., Chief of Ap-
peals, Ann E. Campbell (argued), Asst. U.S.
Atty., Philadelphia, Pa., for appellee.

Before BECKER, SCIRICA, and
NYGAARD, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents several questions
arising out of the new federal sentencing
guidelines, the most important of which
involves the applicability of the criminal
livelihood guideline in effect before Novem-
ber 1, 1989 to someone with a high percent-
age, but low amount, of income that is
illicit. We conclude that the guideline is
inapplicable to defendants whose yearly
profit from crime is less than 2000 times
the hourly minimum wage.

In this case, the district court's applica-
tion of the criminal livelihood guideline en-
hanced the sentence appellant Richard
Cianscewski otherwise would have received

under the fraud and deceit guideline. We conclude that the district court correctly calculated the appropriate sentencing range under the fraud and deceit guideline, but misapplied the criminal livelihood enhancement. Accordingly, we will vacate and remand for resentencing.

## I. Facts and Procedural History

Richard Cianscewski appeals his sentence of 41 months' imprisonment following conviction of one count of conspiracy,[1] three counts of possessing stolen mail,[2] and three counts of selling stolen United States treasury checks.[3] Cianscewski and his common-law wife were indicted for possessing and selling stolen treasury checks on four separate occasions. She was charged with selling checks worth $3126.45 for $1040 on March 3, 1988. He was charged with selling checks worth $2128.91 for $710 on March 22, 1988; checks worth $2309 for $780 on April 1, 1988; and checks worth $2066.82 for $680 on April 11, 1988.

On each date, Cianscewski or his wife met an undercover government agent in the same McDonald's parking lot to complete the respective sales, which involved a total of twelve checks, seven not counting the checks that she sold on March 3. The Cianscewskis received the checks from a former thief turned government informant. At their joint trial, they each advanced an entrapment defense. A jury acquitted her of the March 3 charges, convicted him of all substantive charges, and convicted both of conspiracy. The face value of all the checks at issue is $9631.18, for which the Cianscewskis received $3210. Excluding the checks Cianscewski's wife sold on March 3, for which no conviction was obtained, the total face value of the remaining checks is $6504.73, for which Cianscewski received $2170.

Cianscewski's offense level was calculated from section 2F1.1 of the Guidelines, which governs fraud and deceit.[4] That guideline provides for a base offense level of six, to be increased by two for losses valued between $5000 and $10,000. In calculating the total amount of loss caused by Cianscewski's criminal activity, the district court included the checks sold by Cianscewski's wife on March 3 and valued all the checks at their face amount. As a result, it determined the total amount of loss to be $9631.18—near the top of the plus-two range for amount of loss. The district court increased Cianscewski's offense level by two more points because his offenses involved more than minimal planning, see Guidelines § 2F1.1(b)(2)(A), and denied him a two-point reduction for acceptance of responsibility, see id. § 3E1.1. These determinations would have placed Cianscewski's offense level at ten; however, the district court determined that the criminal livelihood provision, which prescribes an offense level of not less than 13, see id. § 4B1.3, was applicable.

Cianscewski unquestionably has a Category VI criminal history, the highest that the guidelines employ.[5] A level 13 offense committed by a Category VI criminal yields a sentencing range of 33 to 41 months, see Guidelines Ch. 5, Pt. A, and the district court imposed a 41–month sentence.

On appeal, Cianscewski challenges (1) the applicability of the criminal livelihood provision; (2) the district court's method for calculating amount of loss; (3) the finding of more than minimal planning; and (4) the rejection of acceptance of responsibility. Each of these claims involves an assertedly incorrect application of the guidelines; thus, we have appellate jurisdiction by virtue of 18 U.S.C. § 3742(a)(2).

---

**1.** 18 U.S.C. § 371 (1982).

**2.** *Id.* § 1708.

**3.** *Id.* § 510(b) (Supp.1987).

**4.** Cianscewski's wife was sentenced at a separate proceeding.

**5.** To earn this dubious distinction, one must accumulate 13 or more points in the criminal history calculation. Having been convicted no fewer than 17 times in the last 22 years, Cianscewski has amassed a grand total of 34 points. Unsurprisingly, he does not challenge the district court's criminal history calculation.

## II.  Criminal Livelihood

The criminal livelihood provision applicable at the time of Cianscewski's sentencing provided:

> If the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall be not less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

Guidelines § 4B1.3 (Oct. 1988 ed.).[6]  Read literally, the provision's use of the word "portion," as opposed to simply "amount," seems to suggest that the guideline is applicable to Cianscewski, who, during the period of his present offenses, derived a "substantial portion" of his income (close to 100%) from criminal conduct.[7]  Cianscewski, however, argues that the criminal livelihood provision was not intended to cover crimes that yield only insubstantial profits.  In effect, he asks us to infer a minimum illicit profit requirement—measured in absolute amount—below which the provision is inapplicable, regardless of how high a "portion" of one's income is illicit.  Despite the apparently plain meaning of the term "portion," we conclude that there are at least five reasons for doing so.

First, the geneology of the criminal livelihood provision suggests such an implied limitation.  The criminal livelihood provision implements 28 U.S.C. § 994(i)(2),[8] and the legislative history of section 994(i) makes clear that Congress derived that provision from the old special offender statutes,[9] which had prescribed enhanced punishment for any defendant whose "pattern" of criminal activity "constituted a substantial source of his income." [10]  The special offender statutes defined "substantial source of income" in part as "a source of income which for any period of one year or more exceeds [2000 times the hourly]

---

**6.**  At one point in his brief, Cianscewski suggests that the relevant Guidelines were those in effect during March and April of 1988, the time of his offenses.  *See* Appellant's Br. at 10.  Cianscewski is mistaken, for 18 U.S.C. § 3553(a)(4) directs the sentencing court to consider the Guidelines "that are in effect on the date the defendant is sentenced." *See also id.* § 3553(b) (requiring the sentencing court to impose a sentence "of the kind, and within the range, referred to in subsection (a)(4)" unless there exist aggravating or mitigating circumstances not adequately considered by the Sentencing Commission).  Thus, section 3553 required the district court to consider the guidelines in effect on February 16, 1989, the date of Cianscewski's sentencing.  Because neither the June 1988 nor the October 1988 amendments to the Guidelines affected the calculation of Cianscewski's sentencing range, we need not consider the possibility that some retroactive applications of amended guidelines might violate the Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3.  *See Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) ("[T]o fall within the *ex post facto* prohibition … the law … 'must disadvantage the offender affected by it.'" (citation omitted)).

**7.**  Arguably, the guideline is inapplicable because Cianscewski's present offenses, considered in isolation, do not constitute a "pattern of criminal conduct" because they occurred within a period of less than six weeks.  As defined in the criminal livelihood guideline, "'[p]attern of criminal conduct' means planned criminal acts occurring over a substantial period of time."  Guidelines § 4B1.3 application note 1.  Because we conclude that Cianscewski did not derive a "substantial portion" of his income from his present offenses, we need not consider whether conduct during a six-week period of time could constitute a "pattern of criminal conduct."  Moreover, because the government does not attempt to meet the "substantial portion" requirement by aggregating Cianscewski's present offenses with his various and sundry past criminal activity, we need not consider whether the illegal activity engaged in by Cianscewski during most of his adult life constitutes a single "pattern of criminal conduct."

**8.**  Section 994(i) provides:

> The [Sentencing] Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant … (2) committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income….

**9.**  18 U.S.C. § 3575 (1982), *repealed by* Pub.L. No. 98–473, tit. II, ch. II, § 212(a)(2), 98 Stat. 1987 (1984); 21 U.S.C. § 849 (1982), *repealed by* Pub.L. No. 98–473, tit. II, § 219(a), 98 Stat. 2027 (1984).  For the legislative history explicitly linking 28 U.S.C. § 994(i) to these old statutes, see S.Rep. No. 225, 98th Cong., 2d Sess. 120, 176, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3303, 3359.

**10.**  18 U.S.C. § 3575(e)(2); 21 U.S.C. § 849(e)(2).

minimum wage."[11] To be sure, section 994(i) and the criminal livelihood guideline speak of substantial "portion" where the special offender statutes spoke of substantial "source"; nonetheless, Congress indicated that that guideline should "embody[ ] the same considerations which are contained in the ... special offender statutes." S.Rep. No. 225, 98th Cong., 2d Sess. 120, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3303.

Second, the application note to the criminal livelihood guideline, which states that "[t]his guideline is not intended to apply to minor offenses," suggests an implicit absolute threshold requirement. *See* Guidelines § 4B1.3 application note 1 (Oct. 1988 ed.).

Third, a literal reading of the word "portion" as used in section 994(i) and the criminal livelihood guideline is difficult to reconcile with 28 U.S.C. § 994(d), which requires that the guidelines be "entirely neutral as to the ... socioeconomic status of the offenders." To the extent that "portion" means "portion," as opposed to "amount," a theft of a given sum of money would qualify its perpetrator for potentially harsher treatment under the criminal livelihood guideline if and only if he earned a sufficiently small amount of legitimate income during the relevant period that his "portion" of illegitimate income was correspondingly large. Reading a minimum absolute threshold into the criminal livelihood guideline does not eliminate the apparent tension between sections 994(i) and 994(d), but does reduce it.[12]

11. 18 U.S.C. § 3575(e); 21 U.S.C. § 849(e). Moreover, the statutes required the amount of illicit income during that period to be greater than 50% of a defendant's adjusted gross income for that period. *See id.*

12. The two courts to have considered the issue are split on the question whether *any* percentage-based measurement of illicit income for purposes of the guideline is consistent with section 994(d). *Compare United States v. Kerr*, 686 F.Supp. 1174, 1177 (W.D.Pa.1988) ("We accept th[e] more specific language [of section 994(i) ] as [a] more precise indication of Congressional intent.") *with United States v. Rivera*, 694 F.Supp. 1105, 1106 (S.D.N.Y.1988) ("[The criminal livelihood guideline] should be applied only when the defendant derives substantial income, defined in absolute terms, from criminal activi-

Fourth, the Sentencing Commission has since amended the criminal livelihood guideline, effective November 1, 1989. The amendment replaces the phrase "from which he derived a substantial portion of his income" with the phrase "engaged in as a livelihood" and adds the following application note:

> "Engaged in as a livelihood" means that (1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period.

*See* Guidelines § 4B1.3 (Nov. 1989 ed.). Of course this amendment was not yet applicable at the time of Cianscewski's sentencing. Nonetheless, to the extent that the amendment resurrects the minimum threshold requirement from the old special offender statutes, it can fairly be read to clarify, rather than alter, the standard in the old guideline. Therefore, "we may give it substantial weight in determining the meaning of the existing guideline." *United States v. Ofchinick*, 877 F.2d 251, 257 n. 9 (3rd Cir.1989).[13]

Finally, every court to have considered the issue has concluded that the old criminal livelihood provision, despite its vague "substantial portion" language, does in fact contain a minimum absolute threshold.

ty."). We need not, and hence do not, reach this issue.

13. As explained, the amendment to the criminal livelihood guideline replaced a vague and ill-defined "substantial portion" requirement with a bright-line minimum absolute threshold requirement. Characterizing this change as merely a clarification of the original standard is plausible only because of the genealogical connection between the original criminal livelihood guideline and the old special offender statutes, which contained the same minimum absolute threshold requirement as the amended guideline. *See supra* at 77–78. We do not suggest that the Sentencing Commission, by declaring that substantive changes are intended merely as clarifications, can amend the guidelines retroactively.

*See United States v. Luster*, 889 F.2d 1523, 1527 (6th Cir.1989); *United States v. Nolder*, 887 F.2d 140, 142 (8th Cir.1989); *United States v. Rivera*, 694 F.Supp. 1105, 1106–08 (S.D.N.Y.1988); *United States v. Kerr*, 686 F.Supp. 1174, 1177–78 (W.D.Pa.1988).[14]

For all of these reasons, we conclude that the version of the criminal livelihood guideline in effect on the date Cianscewski was sentenced is inapplicable to someone whose "income" from illicit activity during any twelve-month period is below 2000 times the hourly minimum wage, i.e. $6700.[15] The most Cianscewski profited from his present offenses is $3210. Because that amount falls well below the minimum threshold we have imported from the old special offender statutes and the new guideline, the old guideline may not be applied to Cianscewski solely on the basis of his present offenses.[16]

The criminal livelihood guideline might, in theory, still be applicable to Cianscewski if (1) his present and some of his past offenses constituted a single "pattern of criminal conduct"; (2) those past offenses netted Cianscewski over $6700 in illicit profit during some past twelve-month period; and, perhaps, (3) either (A) that profit amounted to more than 50% of Cianscewski's adjusted gross income during that period (assuming that the special offender standard governs) or (B) the criminal conduct was Cianscewski's primary occupation during that period (assuming that the new guideline standard governs). It is unclear whether the criminal livelihood guideline was (incorrectly) applied on the basis of Cianscewski's present offenses only or (arguably correctly) applied on the basis of his earlier earlier offenses as well. The presentence report contains language susceptible of either interpretation:

> Mr. Cinascewski [sic] has a criminal record which spans 24 years.... Aside from substantial time spent in prison (1976 to 1980 and 1984, through 1987), the defendant has been sporadically employed as a seasonal roofer. It can be inferred from the above information that most of the defendant's income and livelihood have been derived from criminal acts. The defendant and Joanne Buck earned $3,210 from the sale of stolen government checks, which comprises the instant offense. The amount of money is considered substantial in view of the defendant's arrest history, periods of incarceration, limited work history, and reported economic situation.

Presentence Report ¶ 50.[17] The record indicates that Cianscewski has had only "lim-

---

**14.** The courts differed somewhat in their approaches. *Luster* interpreted the "substantial portion" language as coextensive with the "engaged in as a livelihood" language that eventually replaced it. *See Luster*, 889 F.2d at 1529. *Nolder* and *Kerr* interpreted the "substantial portion" language as coextensive with the definition of "substantial source" in the old special offender statutes. *See* 887 F.2d at 142; 686 F.Supp. at 1178. *Rivera* interpreted "substantial portion" to mean "sufficiently large in [absolute] amount to be considered 'substantial,'" *see* 694 F.Supp. at 1106, the amount deemed "substantial" to be determined on a case-by-case basis, *see id.* at 1108. For purposes of this appeal, we need not determine which of these competing approaches is correct, except to reject *Rivera* insofar as it leaves open the possibility that an annual illicit income less than $6700, *see infra* note 15 and accompanying text, might be deemed "substantial" for purposes of the old version of the criminal livelihood guideline.

**15.** The minimum hourly wage on the date Cianscewski's was sentenced was $3.35. *See* 29 U.S.C. § 206(a)(1) (1982). Two thousand times that amount is $6700.

**16.** The definition of "engaged in as a livelihood" in the new criminal livelihood guideline, *see supra* at 78, is not identical to the definition of "substantial source of income" in the old special offender statutes, *see supra* note 11 and accompanying text. Because both contain a yearly minimum wage requirement, which is not met here, we need not determine whether the "substantial portion of income" requirement in the old criminal livelihood guideline is met in cases, if there be any, when either the "engaged in as a livelihood" requirement or the "substantial source of income" requirement is met, but not both.

**17.** The presentence report has always been considered a confidential document. *See, e.g., United States v. Charmer*, 711 F.2d 1164, 1169–71 (2d Cir.1983). However, a judge sentencing a criminal defendant must state in open court reasons for the particular sentence he imposes. *See* 18 U.S.C.A. § 3553(c) (Supp.1989). For such a statement to be meaningful, it should contain the district court's findings of fact and application of the guidelines to those facts. In this case the district court, rather than making

ited work history," *id.* ¶¶ 60, 67, but contains insufficient evidence to support application of the criminal livelihood guideline on the basis of Cianscewski's past offenses, even under the preponderance standard of proof that applies to factual determinations made during sentencing, *see United States v. McDowell*, 888 F.2d 285, 290–91 (3d Cir. 1989). Had the government pressed this alternative basis for applying the criminal livelihood provision, a remand for further factfinding might have been appropriate. Instead, however, when asked by this court to comment on the effect of the proposed amendment to section 4B1.3, the government conceded that "the criminal livelihood provision is not applicable to the facts of this case." Appellee's Letter Br. at 3.

Because of this concession, we conclude that Cianscewski must be resentenced under the fraud and deceit guideline, section 2F1.1, without the criminal livelihood enhancement. The district court has already calculated the relevant offense level under the fraud and deceit guideline, however, so we now address Cianscewski's objections to that determination.

### III. Amount of Loss

Cianscewski raises three different grounds for challenging the district court's calculation of amount of loss. First, he contends that the district court erred by applying the amount of loss schedule in the first place. He argues that the schedule is inconsistent with section 994(d), because "those at the higher socioeconomic levels, capable of committing larger and more sophisticated thefts and frauds, can steal significantly larger sums of money without enduring an increase in offense level and with it an increase in punishment." Appellant's Br. at 13–14. We find this conten-

tion to be patently without merit. The amount of loss schedule is entirely "neutral as to the ... socioeconomic status" of various offenders, 28 U.S.C. § 994(d): it treats all thieves who steal a given amount the same, regardless of their wealth or income. Ensuring socioeconomic neutrality does not imply, as Cianscewski would have it, that the culpability of stealing must be deemed a linear (as opposed to an increasing, but concave down) function of the amount stolen.

■ Second, Cianscewski contends that the district court should have valued the stolen checks at the amount he received for them on resale, not at their face value. We disagree. Amount of loss is determined according to the following principles:

> "Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.

Guidelines § 2B1.1 application note 2 (Oct. 1988 ed.). When a check is stolen, the cost to the party who ultimately bears the loss is obviously the face value of the check. Thus, when a thief sells his stolen checks at a discount, the "market value" of the stolen checks does not adequately measure the harm of his actions on the victim of the theft. Under such circumstances, the last sentence quoted above indicates that a court does not err by valuing losses at replacement cost to the victim—in this case the face value of the stolen checks.[18]

■ Third, Cianscewski contends that the district court erred in considering the

---

any protracted statement at the sentencing hearing, simply "f[ou]nd as a matter of fact the proposed findings made by the probation officer in paragraphs one through 78 [of the presentence report]," App. at 293–94, none of which contains confidential information. We see no reason why the district court cannot fulfill its duty to make a public statement of reasons in this manner, in effect declassifying relevant portions of the presentence report. We quote from those portions accordingly.

18. This conclusion is reinforced by language in an older guideline stating that "[l]oss is to be based upon replacement cost to the victim or market value of the property, *whichever is greater.*" Guidelines § 2B1.1 application note 2 (Jan. 1988 ed.) (emphasis added). A June 1988 amendment to section 2B1.1 deleted this language before Cianscewski was sentenced, but the amendment was intended only to clarify the language in the January 1988 guideline, *see* 53 Fed.Reg. at 15,232 (Apr. 29, 1988) (reprinting

checks sold by his wife on March 3, for which she was acquitted and he was not charged. The standard of relevant conduct in determining the appropriate guideline ranges plainly allows the sentencing court to consider previously unadjudicated conduct.[19] For Cianscewski's offenses, the standard of relevant conduct includes "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Guidelines § 1B1.3(a)(2).[20] Cianscewski was obviously involved in an ongoing course of conduct to acquire and sell stolen treasury checks, and the district court found that he had been involved in his wife's March 3 sale of stolen checks.[21] That finding, which is not clearly erroneous, is sufficient to hold Cianscewski responsible for the March 3 checks. *See* Guidelines § 1B1.3 application note 2 ("'Such acts and omissions,' as used in subsection (a)(2), refers to acts and omissions ... aided and abetted by the defendant....").

Cianscewski, however, argues that the March 3 checks cannot be considered because a jury acquitted his wife of all criminal charges relating to those checks. That the Cianscewskis knowingly possessed and

sold stolen checks on March 3 is undisputed. Her acquittal establishes only that the jury accepted her entrapment defense. "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). In other words, in order to excuse Mrs. Cianscewski from responsibility for activity that would otherwise be criminal, the jury had to find that *she* was not predisposed to possessing and selling stolen treasury checks. Such a finding in no way precluded the district court from finding that *he* was so predisposed, and therefore not excused from otherwise criminal activity. Indeed, the jury's rejection of Cianscewski's entrapment defense—to say nothing of his past record of no fewer than seventeen prior adult criminal convictions—strongly suggests otherwise. The district court did not err in considering the March 3 checks for purposes of calculating amount of loss.[22]

## IV. More than Minimal Planning

Cianscewski contends that the district court erred by adding two points to his offense level under the fraud and deceit

---

the amendment), which in this case is unambiguous.

**19.** Cianscewski was indicted and convicted for a conspiracy alleged to have occurred between March 3, 1988 and April 11, 1988. As Cianscewski points out, however, his conviction on the conspiracy count could have been predicated on any overt acts during that period, and thus cannot determine his responsibility (or lack thereof) for the checks sold on March 3.

**20.** Section 1B1.3(a)(2) is applicable to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." Section 3D1.2(d), which expressly includes the fraud and deceit guideline, groups together related counts "if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

**21.** *See* Presentence Report ¶ 6; App. at 293–94 (incorporating by reference the presentence report's factfinding).

**22.** In light of this analysis, we need not decide whether a sentencing court may consider conduct relating to counts for which the defendant to be sentenced had successfully asserted an entrapment defense. *Cf. United States v. Ryan*, 866 F.2d 604, 609 (3d Cir.1989) (suggesting that as a general matter, the relevant conduct guidelines allow a sentencing court to "consider evidence on counts of which a defendant was acquitted").

The effect of considering the March 3 checks was to raise Cianscewski's amount of loss from $6504.73 to $9631.18. Arguably, an error of this magnitude would be harmless because either amount yields a two-level addition to the offense level for amount of loss. *See* Guidelines § 2F1.1(b)(1); *cf. United States v. Sciarrino*, 884 F.2d 95, 98 (3d Cir.1989) (refusing to review an alleged miscalculation of amount of drugs small enough not to affect the defendant's offense level). Because we have determined that no error occurred, we need not decide whether a misapplication of the guidelines is harmless error unless it affects the ultimate sentencing range deemed applicable to a defendant.

guideline for "more than minimal planning." *See* Guidelines § 2F1.1(b)(2)(A).

■ As a threshold matter, we must determine an appropriate standard of review of a district court's decision whether or not to apply the upward adjustment for more than minimal planning. An analysis of standards of review in guideline sentencing determinations must begin with 18 U.S.C. § 3742(e), which requires the courts of appeals to give "due deference to the district court's application of the guidelines to the facts." The legislative history explains that the meaning of this "due deference" standard "depend[s] upon the relationship of the facts found to the guideline standard being applied. If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test." 134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988) (statement of Rep. Conyers).

We conclude that a determination whether the commission of some particular offense involved more than minimal planning is essentially factual, and therefore subject only to clearly erroneous review. We see little difference between this kind of inquiry and, for example, one into the role a defendant played in committing a particular offense, which we have held to be factual.[23] Moreover, we note that two other circuits have applied only deferential review to "more than minimal planning" determinations.[24] Finally, we believe that characterizing this determination as factual is consistent with the general approach worked out by the Supreme Court to determine appropriate standards of review of mixed questions of law and fact: the "more than minimal planning" determination is " 'not amenable to regulations by rule because [the determination in each case] involve[s] multifarious, fleeting, special, narrow facts that utterly resist generalization.' " *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2548, 101 L.Ed.2d 490 (1988) (citation omitted). Thus, even though the determination involves an "ultimate fact" in the sense that it automatically triggers a particular legal consequence (in this case a two-step increase in offense level),[25] "as a matter of the sound administration of justice," [26] it is better left to the district court. *See Pierce*, 108 S.Ct. at 2548–49.

The term "more than minimal planning" is defined, in relevant part, as follows:

"More than minimal planning" means more planning than is typical for commission of the offense in a simple form. More than minimal planning also exists if significant affirmative steps were taken to conceal the offense.

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

Guidelines § 1B1.1 application note 1(f).

■ In this case, not even considering the checks sold by his wife, Cianscewski

---

**23.** Section 3B1.2 of the Guidelines provides for reductions in a defendant's offense level if he was either a "minimal participant" or a "minor participant" in the commission of the relevant offense. In *United States v. Ortiz*, 878 F.2d 125, 126–27 (3d Cir.1989), we held that the applicability of this guideline to some set of facts is itself a factual question subject only to clearly erroneous review. *See also United States v. Mejia–Orosco*, 867 F.2d 216, 221 (5th Cir.1989) (same). Similarly, section 3B1.1 of the Guidelines provides for increases in a defendant's offense level if he was either an "organizer," "leader," "manager" or "supervisor" of the offense. Even assuming *arguendo* that the factual nature of this determination were not controlled by *Ortiz*, the weight of authority has characterized the applicability of section 3B1.1 as a factual question subject only to clearly erroneous review. *See United States v. Daugh-*

trey, 874 F.2d 213, 218 (4th Cir.1989); *United States v. Wright*, 873 F.2d 437, 443–44 (1st Cir. 1989); *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir.1989).

**24.** *See United States v. Sutherland*, 890 F.2d 1042, 1043 (8th Cir.1989) (per curiam) (abuse of discretion); *United States v. Scroggins*, 880 F.2d 1204, 1215 (11th Cir.1989) (clearly erroneous).

**25.** *See Pullman–Standard v. Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982) (rejecting the distinction between "ultimate facts" and "subsidiary facts" for purposes of clearly erroneous review under Fed.R.Civ.P. 52(a)).

**26.** *Miller v. Fenton*, 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985).

received seven stolen checks from a government informant or from his wife and sold them to undercover agents on three separate occasions over a three-week period. On each occasion, Cianscewski went to the same prearranged location, entered the vehicle of his buyer, and completed the illicit transaction. On at least one occasion, Cianscewski himself (not his wife) arranged the rendezvous. Under the definition of "more than minimal planning" quoted above, the district court's determination that Cianscewski's offenses involved "more than minimal planning" is not clearly erroneous.

### V. Acceptance of Responsibility

■ The district court denied Cianscewski a two-level reduction for acceptance of responsibility. That adjustment is available "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Guidelines § 3E1.1(a). We reverse a district court's determination whether or not to grant this reduction only if it is clearly erroneous. *See United States v. Ortiz*, 878 F.2d 125, 128 (3d Cir.1989). The record reflects that Cianscewski refused to cooperate with the probation officer during the preparation of the presentence report, failed to show up for his original sentencing hearing, and still contends that he was entrapped. Under these circumstances, the district court's conclusion that Cianscewski has not accepted responsibility for his crimes is not clearly erroneous.

### VI. Conclusion

Because the district court misapplied the criminal livelihood guideline, Cianscewski must be resentenced. The district court's calculations under the fraud and deceit guideline were correct, however. Thus, the guideline range applicable to Cianscewski is 24 to 30 months (for a level 10 offense committed by a Category VI criminal). The district court has yet to consider the possible appropriateness of departing from this range, a determination it must make in the first instance.

The judgment of sentence will be vacated, and the case remanded for resentencing in accordance with this opinion.