**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Paul Michael WOOLFORD,**
**Defendant–Appellant.**

**No. 89–4191.**

United States Court of Appeals,
Fifth Circuit.

March 1, 1990.

Bobby Sneed, Jackson, Miss., for defendant-appellant.

Ruth R. Harris, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before BROWN, WILLIAMS and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Paul Michael Woolford pleaded guilty to and was convicted of conspiracy to possess with intent to distribute over 50 kilograms of marihuana. Woolford was sentenced under the Federal Sentencing Guidelines to fifty months in prison. We affirm the sentence.

I

In December 1987, Paul Michael Woolford was indicted for conspiracy to possess with intent to distribute in excess of 50 kilograms of marihuana from October 1987 through about November 13, 1987. At the same time, he was also indicted for the substantive offense of possession with intent to distribute. Woolford pleaded guilty to the conspiracy charge. On February 7, 1989, he was sentenced pursuant to the Federal Sentencing Guidelines.

In determining Woolford's sentence, the district court calculated the amount of marihuana involved in the offense at 202.7 kilograms (446 pounds), creating a base offense level of 26. The court relied upon the involvement of this amount in spite of the fact that only 180 pounds of marihuana were discovered at the time of Woolford's arrest. The court arrived at its total by combining the 180 pounds with quantities of marihuana that Woolford had apparently possessed and transported earlier in the year, but which amounts were not included in the conspiracy charge.

From the base offense level of 26, the district judge increased the offense level by two by finding that Woolford organized the conspiracy. Then, with a further finding that Woolford had accepted responsibility for his conduct, the judge decreased the offense level by two. Hence, the total offense level was 26. Because Woolford had no countable prior criminal convictions, he had a criminal history category of one. The applicable guideline range for the category and offense level was 63–78 months.

In imposing sentence, the court took a discretionary downward departure because others similarly involved in the same transaction had been sentenced pursuant to old law and received lesser sentences. *See* 18 U.S.C. § 3553(a)(6). Accordingly, Woolford was sentenced to 50 months in prison followed by three years of supervised release.

He also was fined $20,000 plus costs of supervision.

Woolford appeals the sentence by challenging the effective date of the Federal Sentencing guidelines, the Constitutionality of the guidelines, and the court's calculation of the amount of marihuana involved in determining the base offense level.

## II

■ Woolford argues that the effective date of the sentencing guidelines should be December 19, 1987 instead of November 1, 1987. Since his conspiracy ended before the December date, he argues that the district court erred in applying the federal sentencing guidelines.

Woolford bases this argument on the statute enacting the guidelines, which contained a provision precluding it from taking effect until six months after the Sentencing Commission transmitted its report to Congress for review. *See* Continuing Appropriations, 1985—Comprehensive Crime Control Act of 1984, Pub.L. 98–473 § 235, 98 Stat. 1837, 2031–32 (1984). Since that transmission did not happen until June 18, 1987, he contends, the guidelines could not have become effective prior to December 19, 1987.

While Woolford correctly argues that the guidelines were not to go into effect until after Congress had six months to consider the report, his assertion that the report was not transmitted until June 1987 is incorrect. Congress received the submission of the guidelines and policy statements with commentary on April 13, 1987, more than six months before the November 1987 effective date. *See* Sentencing Guidelines and Policy Statements (April 13, 1987); 133 Cong.Rec. H8107 (daily ed. Oct. 5, 1987) (statement of Rep. Conyers). On June 18, 1987, the Commission submitted only a supplementary report. *See* Supplementary Re-

port on the Initial Sentencing Guidelines and Policy Statements (June 18, 1987).

Because there is no legislative history to indicate anything other than that the six month period was to begin running in April,[1] we hold that the effective date of the guidelines is November 1, 1987. To hold otherwise would go against every decision handed down by this and other courts since the existence of the guidelines. *See, e.g., United States v. Hurtado,* 846 F.2d 995, 996 (5th Cir.1988), *cert. denied, Aguas v. United States,* — U.S. ——, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988).

## III

■ Woolford next argues that the sentencing guidelines are unconstitutional because they fail to afford defendants due process rights. The Supreme Court already has upheld the guidelines against basic Constitutional challenges. *Mistretta v. United States,* — U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). But Woolford, relying largely on *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), focusses on the need for individualized sentencing. The government's interest in obtaining a uniform system of sentencing, he claims, is inferior to the personal liberty interests of those sentenced. Hence, Woolford contends, the district judge should have taken into consideration particular mitigating aspects of Woolford's life in determining his sentence.[2]

This attack on the sentencing guidelines is not unique. Indeed, it already has been considered by this court. In *United States v. White,* 869 F.2d 822 (5th Cir.1989), *cert. denied,* — U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *cert. denied, Chambless v. United States,* — U.S. ——, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989), we rejected the argument:

1. In fact, the majority of Congress defeated the Sentencing Guidelines Stay of Implementation Act, H.R. 3307, 100th Cong., 1st Sess., 133 Cong. Rec. H8107, which would have postponed the implementation date of the guidelines until nine months after November 1, 1987, the planned date of enactment. *See* 133 Cong.Rec. H8215 (daily ed. Oct. 6, 1987).

2. Specifically, Woolford believes the guidelines prevented the judge from considering that Woolford has a college-aged daughter for whom he cares greatly and would like to provide a college education. He also believes the court should have taken into account his past steady employment record and the reasons he became involved in the conspiracy.

Appellants argue that this restricted discretion violates the Due Process Clause because it unduly limits the right of an accused to present mitigating factors prior to sentencing. There is, however, no such right guaranteed by the Constitution. The Constitution does not require individualized sentences. [citation] Congress has the power to completely divest the courts of their sentencing discretion and to establish an exact, mandatory sentence for all offenses.

*White,* 869 F.2d at 825 (citing *Lockett v. Ohio,* 438 U.S. 586, 602, 603–04, 98 S.Ct. 2954, 2963, 2964–65, 57 L.Ed.2d 973 (1978)).

There is no difference between Woolford's contention and the one rejected in *White.* We find no Constitutional violation.

### IV

■ Woolford's final attack on his sentence involves the district court's aggregation of the 180 pounds of marihuana found when Woolford was arrested and other amounts of marihuana Woolford had possessed and transported in the months prior to his arrest. The court combined the amounts, even though the previous amounts were not a part of the charge in this case.[3] As a result of the aggregation, Woolford's base level for sentencing purposes was 26 rather than 24. Woolford asserts that given the two-step increase and decrease the judge made, the applicable guideline range for the resulting 24 level without the aggregation would have been only 51–63 months. Then, Woolford claims that with the same type of discretionary downward departure the judge made he would have received a much lighter sentence.

Since Woolford was sentenced in February 1989, all the 1988 amendments to the guidelines are applicable to his case. *See* 18 U.S.C. § 3553(a)(4) & (5) (courts should consider guidelines and policy statements issued by the Sentencing Commission that are in effect on the date of sentencing).[4]

---

**3.** Although the indictment listed the amount as "in excess of fifty (50) kilos," the amount was based only on the 180 pounds that were discovered at the time of arrest.

**4.** Although the statute is explicit on this matter, not all Circuits follow it. The Sixth Circuit, for example, seems to apply, at least on appeal, the sentencing guidelines that were in effect at the time the crime was committed. *See, e.g., United States v. Smith,* 887 F.2d 104, 106 (6th Cir.1989); *United States v. Sailes,* 872 F.2d 735, 736 n. 1 (6th Cir.1989). In these cases, the court makes no mention of the statute. The Third Circuit, on the other hand, has specifically rejected the argument that the relevant guidelines are those in effect at the time the offenses were committed. *See United States v. Cianscewski,* 894 F.2d 74, 77 n. 6 (3rd Cir.1990); *see also United States v. Williams,* 892 F.2d 296, 303–04 (3rd Cir.1989) (applying guidelines as they read at time of sentencing). The Ninth Circuit has agreed. *See United States v. Restrepo,* 883 F.2d 781, 783 n. 6 (9th Cir.1989) (retroactive application of the guidelines is mandated under the Sentencing Reform Act of 1984).

This Circuit never has held specifically which version of the guidelines applies at the time of sentencing. In *United States v. Taplette,* 872 F.2d 101, 105–06 (5th Cir.1989), *cert. denied,* ──── U.S. ────, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989), we implied that the version of the guidelines in effect at the time of the crime might be applicable. That implication, however, did not affect our decision since in that case we specifically declined to reach the issue of whether that portion of the guidelines dealing with relevant conduct was substantively changed by the January 1988 amendments.

An increase in sentence because of an amendment to the guidelines after the offense was committed would be an obvious *ex post facto* violation. *See Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (two critical elements for a criminal law to be *ex post facto* are that it be retrospective and that it disadvantage the offender affected by it). To our knowledge, only one Constitutional challenge has been made to the asserted retroactive application of the amendments. That challenge was made in *Restrepo, supra,* but the Ninth Circuit declined to reach the issue by granting the defendant relief on other grounds. *See Restrepo,* 883 F.2d at 783 n. 6, 784 n. 7 (following the rule that when a court is presented with both statutory and constitutional grounds for granting relief, it should first pass on the statutory claim) (citing *Califano v. Yamasaki,* 442 U.S. 682, 692–93, 99 S.Ct. 2545, 2553–54, 61 L.Ed.2d 176 (1979)). In *Cianscewski, supra,* the Third Circuit decided not to "consider the possibility that some retroactive applications of amended guidelines might violate the Ex Post Facto Clause," *Cianscewski,* 894 F.2d at 77 n. 4, because the amendments added between the time of the offenses and the time of sentencing did not affect the calculation of the defendant's sentence. *Id.*

Woolford does not raise an *ex post facto* challenge and he seems to agree that the amended

Consequently, § 1B1.3 of the Guidelines, as amended on January 15, 1988, controls this issue.[5] That section allows for the consideration of "relevant conduct" in determining the base offense level to be applied to a particular case. Specifically, § 1B1.3(a)(2) provides for the inclusion of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" in grouping multiple counts.[6] The Commentary to the guidelines explains the applicability of this section to drug cases: "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Guidelines, § 1B1.3 Commentary, Background (January 15, 1988). Accordingly, we have held that "the district court is not bound by the quantity of drugs mentioned by the indictment." *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989).

In aggregating the marihuana amounts, the district judge relied on both § 1B1.3 and § 2D1.4. At the time of sentencing, the latter provision read:

(a) Base Offense Level: If a defendant is convicted of participating in an incomplete conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed.

Guidelines, § 2D1.4 (November 1, 1987). An application note explained that "[i]f the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable." Guidelines, § 2D1.4 Commentary, Application Note 1 (November 1, 1987). Hence, upon accepting the presentence report's conclusion that the transportations were all a part of the same plan or conspiracy, the district court based its aggregation of the marihuana amounts on two grounds: (1) that the other transportations were in furtherance of the conspiracy and (2) that the other transportations were part of the same scheme or plan.

Woolford does not attack the district court's application of these sections of the guidelines to his case. Rather, he argues that the earlier transportations constituted separate transactions and were therefore neither in furtherance of the conspiracy nor part of a common scheme or plan. There is not a sufficiently strong nexus, he claims, between the transactions.

Our review of the district court's decision on this issue is governed by statute. 18 U.S.C. § 3742 directs that the Courts of Appeals

shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C.A. § 3742(e) (West Supp.1989). Under this deferential standard, we find no basis for upsetting the trial court's conclu-

---

version of § 1B1.3 applies. Unless Woolford was disadvantaged by the retroactive application of the amendments, no *ex post facto* issue exists. *See Miller v. Florida, supra.* We do not believe Woolford was disadvantaged, both because the earlier version of the guidelines also instructed the judge to take into account relevant conduct beyond the indictment in determining sentence, *see* Guidelines, § 1B1.2(b) (November 1, 1987), and because the January 1988 amendments were intended to "clarify the operation of the guidelines," 53 Fed.Reg. 44, 1287 (1988). *See Taplette,* 872 F.2d at 106 (relevant conduct was properly used to justify upward departure under pre-January 1988 guidelines). *Accord United States v. Guerrero,* 863

F.2d 245, 248–50 (2nd Cir.1988) (January 1988 amendments did not substantively change the consideration of relevant conduct in determining sentence).

**5.** § 1B1.3 was again amended by the November 1, 1989 guideline amendments. Since Woolford was sentenced before that date, we do not consider those amendments in reviewing his case.

**6.** An application note explains that while the section applies to offenses of types for which convictions on multiple counts could be combined under § 3D1.2(d), multiple convictions are not required. Guidelines, § 1B1.3 Commentary, Application Note 2 (January 15, 1988).

sion that the earlier transactions were part of the same scheme or plan. We need not decide whether the court's determination that Woolford's earlier transactions were part of the same scheme is a finding of fact, subject to the clearly erroneous standard of review, or whether it is an application of the guidelines to the facts and therefore entitled to due deference.[7] Under either standard we find no reversible error.

The presentence report contains information indicating that all the transactions with which Woolford was involved included the same people as the transaction for which he was charged and even involved the same shipment of marihuana. Woolford has not objected to this conclusion. He claims instead that the transaction for which he was charged was distinct because it involved an attempt to return to Mississippi marihuana he had already obtained from someone selling the marihuana in Denver. Woolford apparently took the marihuana in order to return it to the supplier in Mississippi. Woolford claims that the marihuana had been picked up earlier in New Orleans and transferred to Denver to the person from whom Woolford later obtained the marihuana for return. Since the transaction for which Woolford was charged only occurred after a government informant had solicited the marihuana and involved delivery to Mississippi instead of Denver, Woolford claims the transactions were part of a separate plan. We find no support for Woolford's claim.

The presentence report makes it clear that all the transactions were a part of an organized drug operation. All the marihuana originated from the same shipment from the same country and involved all the same people. There is no basis, therefore, for Woolford's argument that the latter transaction was part of a different conspiracy just because it was a distinct transaction. One of the clear purposes of § 1B1.3 of the guidelines is to include different transactions that are relevant to the charged conduct, particularly if they are part of a "common scheme or plan." Certainly transactions that are part of the same conspiracy meet this definition. *Accord United States v. White*, 888 F.2d 490, 500 (7th Cir.1989) (equating "common scheme or plan" with "single conspiracy").

Giving due deference to the district court's conclusion that Woolford's earlier transactions were a part of the same scheme or plan as the one for which he was charged, we find no reversible error in the calculation of his sentence.

AFFIRMED.

---

**7.** This Circuit has applied the clearly erroneous rule to a district court's findings about the quantity of drugs implicated by a conspiracy conviction. *See United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989). In that case, however, we reviewed a judge's determination about whether a conspiracy was capable of producing a certain quantity of cocaine. There was no issue about whether the cocaine, regardless of the amount, was a part of the same conspiracy or plan. This Court has not articulated a standard of review for this particular issue.

The First and Eighth Circuits have held district courts' findings that uncharged drugs were part of a common scheme to a clearly erroneous standard of review. *See United States v. Mocciola*, 891 F.2d 13, 16 (1st Cir.1989); *United States v. Gooden*, 892 F.2d 725, 728–29 (8th Cir.1989). The Second Circuit, however, specifically has declined to reach the issue. *See United States v. Joseph Candito*, 892 F.2d 182, 185 (2nd Cir.1989).

Although this Circuit never has reached this issue, we have decided that questions regarding whether a defendant has accepted responsibility and whether a defendant is an organizer, leader, manager or supervisor of criminal activity are questions of fact for review purposes. *See, e.g., United States v. Barreto*, 871 F.2d 511 (5th Cir. 1989). We also have determined, however, that a question regarding grouping of offenses under § 3D1.2 is not purely factual and is therefore not shielded on review by the clearly erroneous standard. *See United States v. Pope*, 871 F.2d 506 (5th Cir.1989).