996 F.2d 1220
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lillian BOYD, Defendant-Appellant.
 No. 92-3431.
 United States Court of Appeals, Seventh Circuit.
 Argued June 15, 1993.
Decided June 18, 1993.
 
 Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judge.
 
 ORDER
 
 1
 A jury found Lillian Boyd guilty of three counts of defrauding the AM Community Credit Union of Kenosha, Wisconsin, in violation of 18 U.S.C. §§ 2, 1344 and 1346, as a result of her participation in a scheme to cash unfunded money orders. Boyd appeals the district court's sentence on the grounds that the court erred in determining the amount of loss attributable to her under the Sentencing Guidelines, § 2F1.1(b)(1), and in imposing a two-level increase in base offense level for more than minimal planning, § 2F1.1(b)(2)(A). We affirm.
 
 I. FACTS
 
 2
 A federal grand jury charged Lillian Boyd and Mark Isermann with three counts of knowingly executing a scheme to defraud the AM Community Credit Union of Kenosha, Wisconsin (the "Credit Union"), during the period from about February 9, 1991 through March 16, 1991. The scheme was carried out with the aid of Tonia Monique Stanley, a teller at the Credit Union, who was recruited by Boyd and Isermann. The plan was to have Stanley imprint money orders for which no funds had been provided and give them to Boyd and Isermann. Boyd and Isermann would then sign the fraudulent money orders, return to the Credit Union and present them to Stanley for cashing. Boyd and Isermann initially pleaded not guilty to all three counts. Stanley, who was named in a separate indictment, entered into a plea agreement with the government in which she agreed to testify at any subsequent trial concerning this scheme. Isermann later changed his plea to guilty, while Boyd elected to stand trial.
 
 
 3
 At Boyd's trial, it was established that twelve unfunded money orders were cashed in this scheme, resulting in a total loss of $8,876.44 to a single victim, the Credit Union.[1] The fraudulent money orders were cashed as follows:
 
 
 4
 Three money orders totalling $899.13 cashed on February 13, 1991, at the Credit Union by Boyd;
 
 
 5
 Two money orders totalling $1,730.31 cashed on February 23, 1991, at the Credit Union by Isermann;
 
 
 6
 One money order for $947.00 cashed on February 26, 1991, at the Credit Union by Isermann;
 
 
 7
 One money order for $1000.00 cashed on or about March 8, 1991 at Al's Stereo by Isermann;
 
 
 8
 Three money orders totalling $2,900.00 cashed on March 11, 1991 at the Credit Union and elsewhere by Isermann;
 
 
 9
 One money order for $700.00 cashed on March 16, 1991 at the Credit Union by Boyd;
 
 
 10
 One money order for $700.00 was given to David Booker by Boyd, and was cashed on March 16, 1991 at the Credit Union by Booker.
 
 
 11
 (Tr. at 39-44, 48, 194-96; Exhs. 1-12).
 
 
 12
 Boyd testified in her own defense, claiming that she had cashed the money orders for Stanley without suspecting they were fraudulent. (Tr. at 174-80). Boyd claimed that all of the money orders were brought to her home by Stanley. (Tr. at 176-77). On cross-examination, Boyd admitted asking Isermann and Booker to sign and cash money orders, but claimed that she did so only at Stanley's request and without knowing that she had become part of an illegal scheme. (Tr. at 194-96). The jury found Boyd guilty of all three counts.[2]
 
 
 13
 A presentence report was prepared, and Boyd filed written objections pertaining to the Sentencing Guideline calculations. At Boyd's sentencing hearing, the district court determined that Boyd's base offense level under U.S.S.G. § 2F1.1(a) was six, and that a two-level increase should be applied because the total loss to the Credit Union in the scheme amounted to $8,876.44. U.S.S.G. § 2F1.1(b)(1). The district court also applied a two-level increase for more than minimal planning as provided by U.S.S.G. § 2F1.1(b)(2)(A). Boyd's adjusted offense level was thus set at ten, with a criminal history category of I, reflecting no prior criminal convictions. The district court then sentenced Boyd to six months imprisonment, three months of which were to be served in community confinement, followed by four years of supervised release.[3] The court also ordered restitution in the amount of $8,867.44, to be paid jointly with Stanley and Isermann to the Credit Union. Boyd filed a timely appeal, objecting to the way the court applied § 2F1.1 of the Guidelines to the facts of her case.
 
 II. ANALYSIS
 
 14
 A. Amount of loss attributable to Boyd.
 
 
 15
 The district court's determination of the total amount of loss attributable to Boyd for purposes of sentencing is a question of the proper application of the Sentencing Guidelines to the facts. We review the district court's findings of fact only for clear error, United States v. Brown, 944 F.2d 1377, 1379 (7th Cir.1991); United States v. Haddon, 927 F.2d 942, 952 (7th Cir.1991), and give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); see United States v. Herrera, 878 F.2d 997, 999-1000 (7th Cir.1989). The meaning of guideline terms such as "loss" is a question of law that receives plenary review. See United States v. Strozier, 981 F.2d 281, 283 (7th Cir.1992); United States v. Mount, 966 F.2d 262, 265 (7th Cir.1992). The parties agree that the district court's determination of the amount of loss attributable to Boyd should be upheld if not clearly erroneous. (Appellant's Br. at ix; Appellee's Br. at 9).
 
 
 16
 Because Boyd was convicted of taking part with other persons in a scheme to defraud the Credit Union, the Sentencing Guidelines require that her applicable guideline range be determined not only on the basis of her own acts, but also on the basis of "all reasonably foreseeable acts ... of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The evidence submitted at trial established that all the participants in the scheme contemplated that Isermann would obtain and then cash unfunded money orders, and that Booker cashed an unfunded money order at Boyd's request. Boyd's claim that she was unaware of the activities of other participants in the fraud is foreclosed both by the jury's verdict and by the district court's amply supported findings of fact at sentencing.
 
 
 17
 Boyd also argues that in order for her to be held responsible for the dollar amounts of the money orders cashed by others in the scheme, both the total number of money orders cashed and their dollar amounts should have been "reasonably foreseeable" by Boyd. The Guidelines hold co-defendants responsible for the "acts" of other participants in furtherance of an agreed-upon scheme on the basis of the foreseeability of those acts.[4] In United States v. Edwards, 945 F.2d 1387 (7th Cir.1991), cert. denied, 112 S.Ct. 1590 (1992), where the amount of drugs attributable to each participant in a drug conspiracy for purposes of sentencing was in dispute, we held that "the most relevant factor in determining the reasonable foreseeability of conduct engaged in by co-conspirators ... is the scope of the defendant's agreement with the other conspirators." 945 F.2d at 1392. Given the nature of the initial agreement between Boyd, Isermann and Stanley, the district court determined that the money orders cashed by Isermann were within the contemplated scope of the scheme to defraud the Credit Union, so that the total amount of loss brought about by Isermann's acts must also be attributed to Boyd. (Sentencing Tr. at 8-9).
 
 
 18
 Although Boyd was directly involved in negotiating only five fraudulent money orders, totalling approximately $2,300,[5] Boyd has presented no convincing argument that the other seven money orders negotiated by Isermann, totalling approximately $6,577, were beyond the scope of the initial agreement between Boyd, Isermann and Stanley. Neither the total number nor the face amount of the money orders cashed by Isermann differs so greatly from those cashed by Boyd as to cast doubt on the district court's conclusion that they were reasonably foreseeable by Boyd and are fairly attributable to her.[6] Moreover, the fact that Isermann cashed two of the money orders at locations other than the Credit Union does not differ so greatly from the agreed-upon scheme as to take those money orders outside the scope of the jointly undertaken activity. Isermann could just as easily have cashed the two money orders at the Credit Union and then bought stereo equipment with the proceeds. Boyd's case might have been more convincing if Isermann had obtained money orders from some other financial institution, or from someone other than Stanley at the Credit Union, or if the amounts he obtained through the scheme had been much greater than those obtained by Boyd. Under the facts presented, the district court's view of the evidence is not clearly erroneous. See Herrera, 878 F.2d at 1000 (citing Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)).
 
 
 19
 B. The "more than minimal planning" enhancement.
 
 
 20
 A district court's finding of "more than minimal planning" is reviewed for clear error. United States v. Moore, No. 92-2730, slip op. at 5 (7th Cir. April 14, 1993) (citing United States v. Lennick, 917 F.2d 974, 979 (7th Cir.1990)). A two-level enhancement in base offense level is appropriate where the offense involves "repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, Application Note 1(f); see United States v. Nafzger, 974 F.2d 906, 916 (7th Cir.1992); United States v. Doherty, 969 F.2d 425, 430 (7th Cir.), cert. denied, 113 S.Ct. 607 (1992).
 
 
 21
 Boyd's argument that she committed only two overt acts in furtherance of the scheme, and that two acts are insufficient to warrant a § 2F1.1(b)(2)(A) enhancement, see United States v. Maciaga, 965 F.2d 404, 406-07 (7th Cir.1992), does not survive scrutiny. The evidence brought forward at trial shows that, as in United States v. Moore, Boyd engaged in advance planning with Stanley and Isermann to obtain and then cash the unfunded money orders. See Moore, slip op. at 6. Furthermore, even if we were to consider only Boyd's overt acts in furtherance of the scheme, and count the number of times Boyd cashed money orders rather than the number of money orders cashed, the evidence shows that Boyd herself either cashed or initiated the cashing of five money orders on three separate occasions.[7] Thus, Boyd committed "repeated and interrelated acts over a period of time" which were not "purely opportune," see id., evincing that her role in the offense involved more than minimal planning. See id. at 6-7; cf. Maciaga, 965 F.2d at 406-07 (no evidence of prior planning by defendant, or that two acts of theft were interrelated). The district court's two-level enhancement was therefore proper.
 
 CONCLUSION
 
 22
 The district court's determination of Boyd's sentence is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 There is a minor discrepancy as to this figure. The evidence admitted at trial shows that the Credit Union lost $8,876.44, but the order of restitution reversed the last two digits in the dollar amount, to read $8,867.44. Both parties have agreed to allow the latter figure to represent the total loss
 
 
 [2]
 Counts I and II of the indictment charged Isermann with executing the jointly undertaken scheme by cashing two fraudulent money orders; Count III charged Boyd with executing the scheme by cashing a fraudulent money order. The jury thus found that Boyd was responsible for two of the money orders cashed by Isermann as part of the scheme
 
 
 [3]
 The district court thus imposed the lowest possible sentence within the applicable Sentencing Guidelines range of six to twelve months imprisonment. The court also adopted Boyd's suggestion to impose a "split" sentence pursuant to § 5C1.1(c)(2), allowing her to serve three months in community confinement
 
 
 [4]
 Application Note 2(c)(2) provides an example of what is meant by a reasonably foreseeable loss brought about by the separate acts of two defendants who have entered into a scheme to sell fraudulent stocks by telephone: if one defendant fraudulently obtains $20,000 and the other obtains $35,000, each is held accountable for the entire amount ($55,000) for purposes of sentencing
 
 
 [5]
 Boyd personally cashed four money orders totalling about $1,600, and gave one money order for $700 to Booker to cash
 
 
 [6]
 It may also be noted that no Credit Union money order was valid for an amount over $1000, and that Boyd was presumably aware of this fact, since the money orders she herself cashed had this information printed on them. Thus it was reasonably foreseeable by Boyd that Isermann would cash a number of money orders as agreed, and that each could have a face amount of $1000
 
 
 [7]
 Boyd's reliance on United States v. Cianscewski, 894 F.2d 74 (3d Cir.1990), and on Seventh Circuit cases such as Maciaga, 965 F.2d at 407, which cite Cianscewski with approval, is therefore misplaced. Under the reasoning of those cases, Boyd committed three separate acts which resulted in the negotiation of unfunded money orders at the Credit Union: Boyd cashed three money orders on February 13, 1991, one money order on March 16, 1991, and gave one money order to Booker to cash on March 16, 1991. See Cianscewski, 894 F.2d at 82-83 (defendant who sold stolen checks to undercover agents on three separate occasions over three-week period at prearranged location received a two-level enhancement for "more than minimal planning")