UNITED STATES of America

v.

Harold LAWSON.

Cause No. SCr. 90-29.

United States District Court, N.D. Indiana, South Bend Division.

Oct. 29, 1990.

William T. Grimmer, Asst. U.S. Atty., South Bend, Ind., for plaintiff.

Paul J. Newman, South Bend, Ind., for defendant.

## FINDINGS ON DISPUTED FACTS PERTINENT TO SENTENCING

MILLER, District Judge.

During trial, Harold Lawson tendered a guilty plea to a charge of conspiracy to possess with intent to distribute marijuana, 21 U.S.C. § 846, in exchange for dismissal of nine substantive counts. The plea was tendered as part of a plea agreement with certain provisions pertinent to sentencing; those provisions are discussed below. The United States Sentencing Guidelines ("U.S. S.G.") govern the case. Argument was held on the parties' objections to the presentence report on October 25, 1990, and the court took the objections under advisement, with sentencing deferred to November 5, 1990.

Harold Lawson organized this conspiracy, which included his brother David, Brian Thompson, Kerry Goodpastor, and at least one source for the marijuana. Mr. Lawson would arrange to obtain marijuana in southern Texas and Brian Thompson would drive the marijuana to northern Indiana for delivery to David Lawson. The charged conspiracy existed from mid-January, 1990 to the end of March, when Thompson got caught in Texas and agreed to cooperate. During the life of this conspiracy, Thompson transported about 202 pounds of marijuana from Texas to Indiana. The base offense level for a conspiracy that involved a quantity of 202 pounds (or 91.63 kilograms) of marijuana is 24. U.S.S.G. § 2D1.1(c)(10); see *United States v. Adonis*, 891 F.2d 300, 302 (D.C. Cir.1989) (drug table applies to conspiracies to distribute controlled substances).

### A. Relevant Conduct

U.S.S.G. § 1B1.3(a)(2) provides that in determining the offense level for quantity-based offenses such as this, the court must consider "relevant conduct", or all acts that were part of the same course of conduct or common scheme or plan as the offense of conviction. See *United States v. Lued-*

**1352**

*deke*, 908 F.2d 230 (7th Cir.1990). Several other episodes constitute potential "relevant conduct" for purposes of determining Mr. Lawson's offense level.

### 1. Undisputed Conduct

■ In February, 1989, David Lawson and Kerry Goodpastor were stopped in Mississippi while delivering 200 pounds of marijuana from Texas to Florida for Harold Lawson; although this conduct occurred about a year before the charged conspiracy, the marijuana came from the same source as did the marijuana involved in the charged conspiracy. The government argues for inclusion of this incident in determining the offense level, and Mr. Lawson has raised no objection. The court concludes that this incident, involving the transportation of the same substance, from the same state, through the same conspirators as in the charged conspiracy, is part of the same course of conduct as the charged conspiracy, and so properly is considered in determining the offense level. See *United States v. Woolford*, 896 F.2d 99, 103–104 (5th Cir.1990); *United States v. Sleet*, 893 F.2d 947, 949 (8th Cir.1990).

This additional 200 pounds, or 90.72 kilograms of marijuana, produces an aggregate amount of 182.35 kilograms of marijuana, placing Mr. Lawson, for the moment, at offense level 26. U.S.S.G. § 2D1.1(c)(9).

### 2. Disputed Conduct

■ On February 8, 1988, agents searched Brian Thompson's residence and garage. They found 163 pounds of marijuana in the residence, and another 513 pounds in David Lawson's van in the garage. In this case, the government originally argued, and the probation officer agreed without objection by Mr. Lawson, that the quantity found in the residence constitutes "relevant conduct" by Mr. Lawson. At the sentencing hearing, however, the government abandoned its position in light of its argument with respect to the marijuana found in the van. This 163 pounds, or 73.94 kilograms of marijuana would not affect the offense level.[1]

The government and defense each contend that the 513 pounds found in David Lawson's van in Thompson's garage cannot be considered as relevant conduct. The probation officer disagreed. Depending on whether the marijuana in the Thompson residence were included, consideration of the additional 513 pounds would produce an aggregate quantity of either 415.05 or 342.-11 kilograms of marijuana, in either event elevating Mr. Lawson from offense level 26 to level 28. U.S.S.G. § 2D1.1(c)(8) (400–700 kg).

At the sentencing hearing, the government raised two bases for disregarding the marijuana found in the residence. First, in Thompson's case, the court suppressed the evidence of the search; the court found that Thompson's ex-wife, on whose purported consent the search was based, could not consent to the search of Thompson's home and garage. The record at that suppression hearing (to which Mr. Lawson was not a party) indicated that no other person had access to the home or garage.

■ In the plea agreement, Mr. Lawson and the government agreed that the marijuana found in the garage could not be considered as relevant conduct. That agreement does not bind the court, *United States v. Forbes*, 888 F.2d 752 (11th Cir. 1989); U.S.S.G. § 6B1.4(d) (Policy Statement), which must make its own determination. U.S.S.G. § 1B1.3(a)(2) is mandatory and not permissive; if the conduct falls

---

1. The additional 73.94 kilograms of marijuana found in the residence, when coupled with the marijuana involved in the charged conspiracy and that seized in Mississippi in 1989, would produce an aggregate quantity of 256.29 kilograms of marijuana. Because the Sentencing Guidelines assign the same offense level to quantities of marijuana ranging from 100 to 400 kilograms, offense level would remain at 26. U.S.S.G. § 2D1.1(c)(9).

The court need not resolve disputes if the same sentence would be applied regardless of the dispute's resolution. *United States v. Munster–Ramirez*, 888 F.2d 1267, 1273 (D.C.Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1951, 109 L.Ed.2d 313 (1990); *accord, United States v. Dillon*, 905 F.2d 1034, 1037–38 (7th Cir.1990); *United States v. Tetzlaff*, 896 F.2d 1071, 1073 (7th Cir.1990).

within the guideline's definition, the court must consider it in determining the guideline range.

■ In Thompson's case, the court suppressed the evidence because the search of Thompson's residence and garage violated Thompson's rights under the Fourth Amendment. The theory by which the search of Thompson's residence and garage, and David Lawson's van, might be said to have violated Harold Lawson's Fourth Amendment rights is not evident from the presentence report or the transcript of Thompson's suppression hearing. See, e.g., *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Carter*, 854 F.2d 1102, 1105 (8th Cir.1988); *United States v. Kinsey*, 843 F.2d 383, 390 (9th Cir), *cert. denied* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988); *United States v. Hawkins*, 788 F.2d 200, 203 (4th Cir.), *cert. denied* 479 U.S. 850, 107 S.Ct. 176, 93 L.Ed.2d 112 (1986). Just as "the Fourth Amendment protects people, not places," *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), the Fourth Amendment protects people, not pot. That the marijuana was suppressed in the prosecution of one who had a reasonable expectation of privacy in the places searched has no effect on its consideration in determining the offense level of one who had no such reasonable expectation. In David Lawson's related case, the court declined to include the marijuana from the van in determining the offense level, in part because the record indicated that David Lawson had at least a colorable claim of standing to challenge the search. The same cannot be said of Harold Lawson on the basis of the evidence of record.

At the sentencing hearing in this case, however, the government indicated that were a hearing held on the issue in 1990, Thompson would indicate that Mr. Lawson had a key to the padlock on the garage and directed that it be boarded up. Wary of Thompson's inconsistent tales, counsel for government informed the court that he did not believe he could disprove Harold Lawson's standing to challenge the search of the garage.

More fundamentally, counsel for the government informed the court that he could not connect Mr. Lawson to the marijuana by a preponderance of the evidence. Relevant conduct, of course, must be proved by a preponderance of the evidence. *United States v. White*, 888 F.2d 490, 499 (7th Cir.1989). The government's attorney informed the court that while Thompson would testify that Mr. Lawson once requested a bale of marijuana from the house, that testimony cannot be corroborated. In light of Thompson's credibility problems, even given the lack of basis by which to distinguish the marijuana in the residence from the marijuana in the garage, counsel for the government informed the court, "I can't tie, by a preponderance of the evidence, Harold Lawson to that 513 pounds." It appears from the argument made on objections to the presentence report that while Thompson's testimony would have been an important portion of the government's proof of its case in chief at trial, the government chooses to rely upon Thompson's testimony only to the extent it is corroborated by other evidence. The government's written pretrial proffer made in support of admissibility of coconspirators' statements corroborates this view.

While the government's counsel never expressly said so, and could hardly be expected to so say in light of the possibility of withdrawal of the guilty plea, *see United States v. Salva*, 902 F.2d 483, 488 (7th Cir.1990), it appears that the government believes that the court would not accept Thompson's veracity except to the extent his testimony is corroborated. The guidelines do not address such a prosecutorial evaluation of credibility. The Commentary to U.S.S.G. § 6B1.4 states that "the parties should fully disclose the actual facts and then explain to the court the reasons why the disposition of the case should differ from that which such facts ordinarily would require under the guidelines", but do not tell us whether a witness's credibility is a "fact".

Prosecutors are expected to make judgments concerning credibility of witnesses and what can be proven. See, e.g., *United States Department of Justice March 13, 1989 Plea Policy for Federal Prosecutors* ("The basic policy is that charges are not to be bargained away or dropped, unless the prosecutor has a good faith doubt as to the government's ability readily to prove a charge for legal or evidentiary reasons."). At bottom, however, the determination here is that of the government's attorney, rather than that of the court. As indicated by the commentary quoted above, the sentencing guidelines seem to envision determination of facts by the sentencing court.

■ In implementing the sentencing guidelines, courts may not blithely rely upon counsel's representations. The courts must be vigilant that the parties do not report the facts in such a way as to affect the outcome of cases under the guidelines. See, e.g., *United States v. Fiterman*, 732 F.Supp. 878 (N.D.Ill.1989); *see also United States v. Roberts*, 726 F.Supp. 1359, 1364–65 (D.D.C.1989). The guidelines are intended to prevent such occurrences. See *Commentary*, U.S.S.G. § 6B1.4.[2] It remains to determine how much deference the court should pay to the government's evaluation of the probative value of its evidence.

In David Lawson's case, the court concluded that absent some indication that the attorneys are trying to evade the guidelines, some deference must be afforded the government's evaluation of the force of its proof. Conceding that care must escort that deference because such an approach provides unscrupulous parties with a loophole that might allow any case to slip through the guidelines, the court concluded that sufficient indicia were presented to allow the court to make its own independent determination that the prosecutor was acting in good faith. David Lawson had filed a pretrial motion to suppress evidence of the search of his van at the Thompson home, and before a plea agreement was reached, the government had chosen not to oppose the motion and informed David Lawson's attorney that the government would not seek to admit the evidence at trial. The government's position with respect to the pretrial motion indicated that its sentencing position was no gambit to evade the guidelines.

Harold Lawson, who has never claimed an interest in the property searched or the property seized, filed no pretrial suppression motion. Nonetheless, the government's pretrial and trial behavior with respect to Harold Lawson, was consistent with the position taken at sentencing. The government had been ordered to file, with-

---

**2.** The guidelines' success in preventing such practices is presently under debate. In a survey of thirty federal district judges from throughout the country, who had collectively imposed more than 800 guidelines sentences,

... a large number of our respondents—73%—had observed cases in which they knew or suspected that the parties, through negotiation, had reached agreement concerning facts relevant to application of the guidelines. The guidelines impose clear limits on this sort of "fact bargaining: "[S]tipulations shall: (1) set forth the relevant facts and circumstances of the actual offense conduct and offender characteristics [and] (2) not contain misleading facts." Yet 70% of the judges who had observed "fact bargaining" said that they had "sometimes" observed the nonassertion of provable facts, and an additional 13% called this prohibited form of fact-bargaining "frequent."

We asked, "In cases in which the probation officers and Assistant United States Attorneys disagree [concerning application of the guidelines], how often does the U.S. Attorney rec-

ommend the more severe sentence? The judges' responses indicated that the prosecutors often sought more lenient sentences than probation officers did.... [P]lea bargaining provides incentives for prosecutors to seek more lenient sentences than an objective application of the guidelines would yield.

2 *Federal Sentencing Reporter* 95 (1989). Further, the Federal Courts Study Committee stated,

The guidelines have limited federal prosecutors' formal authority to offer concessions, but Congress has not provided corresponding resources to take more cases to trial. The result, it appears, is that some prosecutors (and some defense counsel) have evaded and manipulated the guidelines in order to induce the pleas necessary to keep the system afloat during this period of rapid criminal caseload increase. Some district judges report feeling enormous pressure to accept pleas even that clearly do not comport with the guidelines. *Report of the Federal Courts Study Committee*, at 138 (April 2, 1990).

in twenty-four hours of the trial's start, notice and a written summary of its intended "uncharged misconduct" evidence claimed to be admissible under Fed.R.Evid. 404(b). The government filed such a summary on August 10, 1990; its eleven-page summary makes no reference to the search of the Thompson residence.

This case reached the second day of trial with no prosecutorial attempt to tie Mr. Lawson to the marijuana at Thompson's residence. This strongly corroborates the government's attorney's good faith in representing to the court that its evidence tying Harold Lawson to that marijuana is not sufficient to establish Mr. Lawson's involvement by a preponderance of the evidence.

■ Accordingly, while the court declines to delegate its fact finding responsibilities to an attorney for either side, neither must the court forge ahead and compel the government's attorney to attempt to prove that which he believes in good conscience cannot be proven, or, alternatively, to appoint other counsel to present the evidence.[3] Under the unique circumstances of this case, in which the court can independently determine that the government has concluded in good faith that it cannot prove that the fruits of the 1988 search had anything to do with Harold Lawson's course of conduct, the court concludes it cannot consider that marijuana as relevant conduct in determining Mr. Lawson's offense level.

### 3. Conclusion on Relevant Conduct

The court will consider none of the marijuana found at the Thompson residence or garage in determining the offense level. Mr. Lawson's offense level remains at 26.

### B. Role in the Offense

Mr. Lawson was an organizer or leader of a criminal activity that involved at least five participants.[4] Accordingly, his offense level is to be increased by four levels, U.S.S.G. § 3B1.1(a), to level 30.

### C. Acceptance of Responsibility

■ The presentence report recommends that no adjustment be made for acceptance of responsibility. U.S.S.G. § 3E1.1(a) requires a reduction for acceptance of responsibility if the defendant clearly demonstrates recognition and affirmative acceptance of personal responsibility for his criminal conduct. That a defendant pleaded guilty does not automatically entitle him to this adjustment. U.S.S.G. § 3E1.1(c). A guilty plea may result from acknowledgement of the force of the government's proof rather than from acceptance of responsibility. *United States v. Lueddeke*, 908 F.2d 230 (7th Cir.1990); *United States v. Franklin*, 902 F.2d 501 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990); *United States v. Carroll*, 893 F.2d 1502 (6th Cir. 1990). Pursuant to the plea agreement, the government recommends that this adjustment be made. Again, the joint recommendation does not bind the court. *United States v. Cardenas*, 896 F.2d 317 (8th Cir. 1990); *United States v. Forbes*, 888 F.2d 752, 754 (11th Cir.1989).

The probation officer recommended disallowance of the reduction due to the lateness of the mid-trial guilty plea, trial, and due to the probation officer's sense that Mr. Lawson was minimizing the seriousness of the offense by inferring that he was simply trying to fulfill consumer demand for marijuana. The tardiness of the acceptance of responsibility may warrant denial of a request for reduction under U.S.S.G. § 3E1.1(a). *United States v. Ber-*

3. "Challenges to the [probation] officers' factual findings and the evidentiary hearings held to resolve them reportedly have prompted some judges to advise probation officers to secure counsel." *Report of the Federal Courts Study Committee*, 139 (April 2, 1990).

4. Although the Seventh Circuit has not addressed the issue, the Second Circuit requires

identification of the participant when a defendant contends there were fewer than five. *United States v. Lanese*, 890 F.2d 1284, 1293–1294 (2nd Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). Here, the five participants were Harold Lawson, David Lawson, Brian Thompson, Kerry Goodpastor, and "Joe", Mr. Lawson's source.

*kowitz,* 712 F.Supp. 707, 710 (N.D.Ill.1989); Application Note 1(g), U.S.S.G. § 3E1.1. Mr. Lawson explains that the tardiness of his plea was due to his understanding that the government's pretrial plea offers would require Mr. Lawson to testify against his brother. The government denies conditioning its plea offer on testimony against a brother, but Mr. Lawson's attorney informed the court that he informed his client that such testimony might follow the plea. Upon learning on the trial's first day, that David Lawson had pleaded guilty, obviating the requirement of testimony, Mr. Lawson promptly entered into his plea agreement.

If Mr. Lawson's hesitance to plead guilty stemmed from his reluctance to help the government convict his brother, the untimeliness of the eventual guilty plea might not defeat a reduction in offense level under U.S.S.G. § 3E1.1(a). Mr. Lawson's explanation rings somewhat hollow, however, in light of the pendency of drug charges against still another of Mr. Lawson's brothers, Gary, at the time of the guilty plea. Mr. Lawson explains that he did not feel his testimony with respect to Gary was as likely to be requested as his testimony against David.

It appears, then, the Mr. Lawson's principal motivation in delaying his guilty plea was not simply to avoid giving information against a brother. Instead, his course of conduct was designed to deprive the government of the benefit of his testimony against one brother, while obtaining the benefit of the plea offer after hearing several of the government's witnesses at trial. The Seventh Circuit recently noted that a "defendant may accept responsibility for

his own acts without helping the government to convict others, and the reverse." *United States v. Escobar–Mejia,* 915 F.2d 1152, 1153 (7th Cir.1990). Yet a refusal to give authorities information as part of a guilty plea differs from a course of conduct designed to prolong a constitutional bar to testimony to which the government otherwise would be entitled.

Mr. Lawson bears the burden of establishing, by a preponderance of the evidence, that he clearly accepted responsibility for the offense of conviction. *United States v. Christoph,* 904 F.2d 1036, 1040–1041 (6th Cir.1990). He has not met that burden. The timing of his plea leads the court to conclude that his admission stemmed from the force of the proof against him and a desire to cut his losses, rather than acceptance of responsibility.[5]

### D. Determination of Sentencing Range

Mr. Lawson's adjusted offense level is 30.

The parties do not dispute the computation of Mr. Lawson's criminal history category. Three points are assessed for his 1984 federal conviction for conspiracy to possess with intent to distribute marijuana, for which he was sentenced to forty-two months' imprisonment. U.S.S.G. § 4A1.1(a). One point is assessed for his 1989 Texas conviction for driving while intoxicated, for which he was sentenced to forty-five days' imprisonment and two years' probation. U.S.S.G. § 4A1.1(c). Two additional points are assessed because he was on probation on his state conviction when he embarked upon this conspiracy. U.S.S.G. § 4A1.1(d). The six criminal histo-

---

**5.** The probation officer also recommended denial of "remorse points" because Mr. Lawson seemed to minimize the seriousness of the offense during the presentence interview. A defendant's evasiveness in discussing his participation in the offense of conviction may constitute grounds for refusing to apply the two-level reduction of U.S.S.G. § 3E1.1(a). *United States v. Cianscewski,* 894 F.2d 74, 83 (3rd Cir.1990); *United States v. Blanco,* 888 F.2d 907 (1st Cir. 1989) (Breyer, J.). The guidelines require only acceptance of legal responsibility, however, not concession of the seriousness or moral wrongfulness of the offense conduct. *United States v.*

*Weidner,* 703 F.Supp. 1350, 1354 (N.D.Ind.1988), *aff'd without op.,* 885 F.2d 873 (7th Cir.1989). Although such considerations might be predictive of rehabilitation, "rehabilitation is not a factor in the consideration of acceptance of responsibility." *United States v. Braxton,* 903 F.2d 292, 296 (4th Cir.1990).

Mr. Lawson has admitted his guilt and has not challenged the government's assertion that he was the conspiracy's organizer. But for the timeliness of, and motivation behind, his guilty plea, his admissions would suffice under U.S.S.G. § 3E1.1.

ry points place Mr. Lawson in Criminal History Category III.

An offender at offense level 30 and in Criminal History Category III faces a sentencing guideline range of 121 to 151 months' imprisonment. U.S.S.G. Ch. 5, Part A. Because of Mr. Lawson's prior conviction under 21 U.S.C. § 846, he faces a mandatory minimum sentence of ten years' imprisonment. The presentence report identified no basis for departure and imposition of a sentence outside the guideline range. Because the guideline range exceeds twenty-four months, the court will be required to state its reason for imposing a sentence at a particular point within the range. 18 U.S.C. § 3553(c)(1).

The parties will be invited to argue with respect to selection of the sentence within the confines of these findings at 1:00 p.m. on November 5, 1990.

