**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Brigette RAGLAND, Defendant–Appellant.**

No. 99–5479.

United States Court of Appeals, Sixth Circuit.

Jan. 26, 2001.

Before NELSON and MOORE, Circuit Judges; and WILHOIT, District Judge.*

OPINION

WILHOIT, District Judge.

The Defendant–Appellant appeals her perjury convictions and the district court's refusal to reduce her sentence for acceptance of responsibility.

## I.

This case arose out of the FBI's investigation into the suspected drug activities of Calvin McKinley ("McKinley"). The Defendant–Appellant, Brigette Ragland ("Ragland"), stored sizeable amounts of marijuana and cash for McKinley at her house and the home of her sister, Yolanda McFagdon ("McFagdon"). McFagdon was a Memphis police officer assigned to the mayor's security detail. According to Ragland, McFagdon did not initially know Ragland and McKinley were using her home for illicit purposes but learned as much a few months later.

The FBI executed a series of search warrants at various places they believed McKinley was storing narcotics, including Ragland and McFagdon's homes. When McFagdon discovered the search team at Ragland's home, she called Ragland's sixteen-year-old daughter and asked her to remove money stored in McFagdon's attic. McFagdon told the girl to place the money in a bag, take it to school, and store it in her locker. Unfortunately for McFagdon, the FBI intercepted her as she attempted to leave with the money. Agents found $70,000 in cash in the bag. This generated considerable media interest because of McFagdon's employment.

* The Honorable Henry R. Wilhoit, Jr., Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

Ragland learned that she was the subject of a grand jury investigation sometime after the search of her and McFagdon's homes. She requested to appear before the grand jury on her attorney's advice. During her appearance. Ragland falsely testified in response to two separate series of questions that it was she and not McFagdon who called her daughter and told her to remove the money from McFagdon's home.

Sometime after Ragland's grand jury appearance, the FBI contacted her and asked her to come in for another interview. During this interview, Ragland admitted that it was actually McFagdon who called the child and asked her to remove the money. She further admitted that she lied to the grand jury on this point and instructed her daughter to lie also. Ragland subsequently pled guilty to an information charging her with possession with the intent to distribute marijuana, maintaining a place for the manufacture of marijuana, money laundering, two counts of perjury, and one count of obstruction of justice. The two perjury charges were premised on Ragland's two separate statements to the grand jury that she, rather than McFagdon, told her daughter to remove the money from McFagdon's home. The obstruction charge was premised on Ragland's action in instructing her daughter to lie to the grand jury.

The probation department interviewed Ragland and subsequently recommended that she receive a three level enhancement for obstruction of justice but a two level

reduction for acceptance of responsibility. The Government filed no objections to Ragland's presentence report. Early into the sentencing hearing, however, the Government argued to the district court that Ragland deliberately went to the grand jury with a preconceived plan to exculpate her sister.[1] The Defendant denied this. The district court and the parties engaged in a lengthy discourse on this issue and at a certain point, the Government's attorney left the room briefly to attend other matters. The district court continued to discuss the issue with defense counsel in the government attorney's absence in conjunction with the Defendant's plea for an acceptance of responsibility departure.

The trial court ultimately declined to grant an acceptance of responsibility reduction. The court found that Ragland had accepted responsibility for the drug charges but not the perjury. It further found that her acceptance of responsibility was incompatible with her obstruction of justice. It believed Ragland had to know she would be asked about McFagdon given the circumstances of this case. She had to have appeared with an intent to lie on the subject should it come up. Furthermore, she lied outright on not one but two occasions during her grand jury testimony with the intent to frustrate any investigation into her sister's activities. These were willful acts as she had appeared before the grand jury voluntarily. The trial court opined that Ragland only confessed to the FBI after it was clear that they were closing in on her. Finally, the trial court

1. The parties did not file the entire transcript of the sentencing hearing in their joint appendix. It is not entirely clear whether the Government or the Defendant raised the issue of the Defendant's intent and purpose in lying with the district court and whether the same was first raised in conjunction with the Government's refusal to move for a § 5K1.1 reduction for substantial assistance or whether the matter was raised in conjunction with the Defendant's request for an acceptance of responsibility departure. Regardless, the record does clearly indicate the Government's position that the Defendant had a preconceived plan to lie. It also clearly demonstrates that the Court heard both parties on this point before ruling.

expressed its belief that Ragland was not truly sorry for anything other than the fact that she got caught and that she would probably do the same thing again should the occasion arise. Based on all this, the court found that Ragland had not accepted responsibility. It then went on to explain as follows:

> The purpose of acceptance of responsibility is not satisfied in this case. It ... is kind of like ... redemption in the religious context... you have to acknowledge it and you have to seek forgiveness and you have to not want to do it anymore, and it is the not want to do it anymore part that I have had trouble with in this case. You know, if a person says part of my core beliefs is it is okay to do what I did, I just got caught, that's not acceptance of responsibility. And in this case, I am not at all convinced that confronted with the same situation before another grand jury on another point that the defendant wouldn't take the same rationale and say I think I ought to lie on this point because it's good for my sister or it's good for Mr. McKinley or it's good for somebody else .... I have no indication that the state of mind of the defendant has changed at all in that regard.

In an attempt to sway the trial court, Ragland took the stand after the Government's attorney returned to the room and testified that she was in fact sorry and that she did not go to the grand jury with the intent to lie. Rather, she went there believing she would only be questioned about McKinley. Ragland said she was surprised when she was asked about her sister and lied spontaneously to protect her. Ragland testified that she had no preconceived plan to deceive the jury and that both her sister and her attorney told her to be truthful.

During a rigorous cross examination, Ragland conceded that she knew she had the right to consult her attorney and take the fifth amendment during her testimony but took advantage of neither option. She further conceded that she knew she had committed perjury when she left the grand jury room. She did not take advantage of her right to recant though she had been fully advised of that right. More importantly, Ragland admitted that she knew at the time she appeared before the grand jury that her daughter had been subpoenaed, she knew that they would probably ask her daughter about McFagdon's involvement, and she had instructed her daughter to lie that Ragland was the one who called. Finally, Ragland conceded that McFagdon's involvement had been the subject of great media interest and public awareness. Despite all these concessions, Ragland and her attorney both continued to insist to the trial court that she did not expect to be asked about anything other than McKinley and that her perjury was a spontaneous act.

The trial court rejected Ragland's testimony. In doing so, it again noted that Ragland had not accepted responsibility as she would not completely acknowledge her role. The trial court found that Ragland's sentencing testimony was a "continue[d] attempt to mislead the Court".[2] Based on those findings, Ragland received a 5 year sentence on the perjury charges and a seven year sentence on the remaining charges to run concurrently for a total sentence of seven years imprisonment followed by three years supervised release.

---

**2.** A separate case against McFagdon was also pending at that time. The trial court implied that there were fact issues as to whether McFagdon and Ragland mutually concocted this scheme to mislead the grand jury. The trial court reserved that issue for the McFagdon case, though.

The trial court also imposed a $100 special assessment fee for each count of conviction. Ragland now appeals her perjury convictions and sentence.

## II.

 Ragland argues that the two perjury charges lodged against her were multiplicitous. The Government conceded as much at the oral argument before this Court.[3] "Multiplicity" involves charging the same criminal offense in two or more counts of an indictment or information. *United States v. Stanfa,* 685 F.2d 85, 86–7 (3rd Cir.1982). Because it can result in multiple punishments for the same offense, it offends double jeopardy principles. *Id.; United States v. Branham,* 97 F.3d 835, 842 (6th Cir.1998).

 In Ragland's case, the two separate perjury counts were plainly multiplicitous as they involve separate responses to essentially the same question: who told Ragland's daughter to remove the money from McFagdon's home. The law is well established that a single lie merits only one punishment. *United States v. Berardi,* 629 F.2d 723, 729 (2nd Cir.1980). It was improper to charge and punish the Defendant more than once for her answers to the same rephrased questions. *United States v. Sharpe,* 193 F.3d 852, 865 (5th Cir.1999); *United States v. Nixon,* 634 F.2d 306, 313 (5th Cir.1981). And though Ragland's term of imprisonment will not be affected by this ruling inasmuch as the five year sentence she received for perjury is running concurrently with her seven year sentence on the drug convictions, she also received a $100 special assessment on each perjury count. The imposition of the two separate special assessments for the same criminal offense constituted impermissible multiplicitous punishments and offended double jeopardy. *United States v. Corona,* 108 F.3d 565, 572 (5th Cir.1997). The Defendant's conviction and sentence on the second perjury count is therefore reversed.

## III.

For her second claim of error, Ragland insists that she is entitled to a two level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Ragland points to the fact that she confessed to the perju-

3. The Government argued in its brief that Ragland waived her right to raise the multiplicity issue by failing to raise the same with the district court and by pleading guilty to both perjury counts. It appears from the Government's oral concessions that it has abandoned its waiver argument. It is worth noting, nevertheless, that no such waiver occurred. This circuit, together with the fifth and the ninth circuits, permits review of those cases in which the multiplicity of charges is apparent in the record and resulted in multiple sentences. *United States v. Rosenbarger,* 536 F.2d 715, 721–22 (6th Cir.1976); *United States v. Launius,* 575 F.2d 770, 772 (9th Cir.1978); *United States v. Corona,* 108 F.3d 565, 572 (5th Cir.1997). Furthermore, the Supreme Court has suggested and many circuits have found that guilty pleas do not waive double jeopardy issues predicated on multiple punishments where, as here, the is-sues appear on the face of the indictment and can be resolved without an additional evidentiary hearing. *United States v. Broce,* 488 U.S. 563, 575–76, 109 S.Ct. 757, 765–66, 102 L.Ed.2d 927 (1989); *United States v. Pollen,* 978 F.2d 78, 84 (3rd Cir.1992); *United States v. Blocker,* 802 F.2d 1102, 1103 (9th Cir. 1986); *but see Harris,* 959 F.2d at 251 n. 2 (finding the double jeopardy issue founded on multiplicity question was waived but failing to address Broce and its progeny). This Court therefore finds that Ragland's claim was forfeited, not waived, and is now subject to review for plain error. See *United States v. Branham,* 97 F.3d 835, 841–42 (6th Cir.1996)(double jeopardy claim premised on multiplicity of punishments was forfeited rather than waived when not raised with trial court and was subject to review for plain error).

ry before being indicted, pled guilty to an information, and admitted her culpability to the probation department and district court. The probation department even recommended that the reduction be given to which the Government did not object. Based on these facts, Ragland insists it was error to deny her this credit.

■ It was Ragland's burden to prove by a preponderance of the evidence that she was in fact entitled to a reduction for acceptance of responsibility. *United States v. Surratt,* 87 F.3d 814, 821 (6th Cir.1996); *United States v. Wolfe,* 71 F.3d 611, 616 (6th Cir.1995). Her guilty plea did not automatically entitle her to such. *United States v. Castillo–Garcia,* 205 F.3d 887, 888–89 (6th Cir.2000). Though her guilty plea constituted "significant evidence" of her acceptance of responsibility, that evidence could be overborne by other conduct inconsistent with the acceptance of responsibility. *Id.* at 888; U.S.S.G. § 3E1.1, Comment. (n.3). Similarly, the probation department's recommendation that the adjustment should apply was relevant but not controlling. *Wolfe,* 71 F.3d at 616. It was for the trial court, ultimately, to determine whether the Defendant had accepted responsibility for her criminal conduct. *Id.* This was a fact question which the trial court was in the best position to judge. *United States v. Van Shutters,* 163 F.3d 331, 340 (6th Cir.1998); *United States v. Reed,* 951 F.2d 97, 99 (6th Cir.1991). This Court therefore affords the trial court's judgment great deference and reviews the same only for clear error. *Van Shutters,* 163 F.3d at 340. Because a trial court's findings often depend heavily on credibility assessments, they rarely warrant reversal. *Reed,* 951 F.2d at 100.

The trial court found that Ragland had not accepted responsibility for the perjury counts. It did not believe either her attorney's claim or the Defendant's testimony that she did not expect any questions about her sister's involvement. It also did not believe that she was truly sorry for anything other than the fact that she got caught. Furthermore, it felt that the Defendant was likely to lie to the courts again in the future should a personal need arise. These were largely credibility assessments.

■ At oral argument, Ragland's attorney argued with considerable feeling that we must reject the district judge's findings as the product of his improper advocacy on the Government's behalf during the prosecutor's brief absence. Ragland insists that the district court improperly abandoned its role as a neutral and detached entity and took on the role of government advocate when discussing the intent issue with defense counsel.[4] After reviewing the sentencing transcript, we conclude that, while it is not recommended practice for the trial court to conduct a sentencing hearing when the prosecution is absent, in this case we do not find reversible error.

The issue of Ragland's intent was raised and fully discussed by the parties before the government attorney left the room. The trial court did not simply raise an unconsidered matter. Furthermore, the Defendant fails to appreciate that this was a sentencing hearing rather than a trial. It is entirely proper for a sentencing judge to review a case and make certain preliminary decisions regarding the same before he or she comes to the bench for sentencing. Indeed, the probation department

---

4. Though the Defendant primarily focused on this argument at oral argument, she did not include it in the defense brief. Indeed, the only written reference to the prosecutor's departure from the room are passing comments found in two footnotes to the facts section of her brief.

prepares pre-sentence reports to assist the judge in that very task. So long as the judge gives the parties a fair opportunity to be heard and fairly considers their position prior to imposing sentence, something we find the district judge did here, we cannot find any impropriety based only on the judge's failure to be moved from his apparent preliminary assessments.

■ Ragland also insists it was irrelevant whether or not she expected the grand jury to question her about her sister's involvement. Acceptance of responsibility, though, requires complete acceptance for all counts under which a defendant is convicted, *United States v. Ginn,* 87 F.3d 367, 370 (9th Cir.1996), without excuse or attempt to minimize one's wrongdoing. *Wolfe,* 71 F.3d at 616; *United States v. Jones,* 52 F.3d 697, 701 (7th Cir.1995), see also *United States v. Watkins,* 179 F.3d 489, (6th Cir.1999) (no acceptance of responsibility where defendant tried to excuse conduct by insisting drug operations were not his idea and stating he was not a drug dealer); & see *United States v. Surratt,* 87 F.3d 814 (6th Cir.1996) (a defendant does not accept responsibility for criminal behavior if he tries to excuse his conduct by claiming he acted under the influence of drugs.) In denying that she expected questions about her sister, Ragland essentially tried to minimize or excuse her conduct by denying a preconceived plan to lie. Again, this was an issue that the parties raised with the trial court. Ragland, of course, was not required to volunteer information beyond the offense of her convictions. U.S.S.G. § 3E1.1 commentary at 1(a). Once she

did, though, she had a duty to speak candidly.

■ The district court found that Ragland was not being truthful with it in either her attorney's representations or her testimony. The district court's assessment was a fact issue to which we defer. It was certainly not clear error given the circumstances and inferences surrounding Ragland's testimony. Ragland's incredible personal statements were therefore inconsistent with her acceptance of responsibility. *Wolfe,* 71 F.3d at 616; *Jones,* 52 F.3d at 701; see also, U.S.S.G. § 3E1.1 commentary at 1(a) ("a defendant who falsely denies relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.").

■ The Defendant next claims that the sentencing judge improperly interjected religious principles in this case and thereby imposed too harsh a standard on her.[5] Upon review of the transcript of the sentencing hearing, we conclude that the district court did not actually assess the Defendant's behavior under a religious code nor did the district court require the Defendant to demonstrate that she had undergone a form of "religious redemption." Had the district court so required, it clearly would have acted in error. The Sentencing Guidelines certainly do not require a defendant to demonstrate religious redemption in order to show acceptance of responsibility. Nor is it the law of this or any other circuit that defendant must make such an extraordinary showing.

Instead, it is clear that the district court believed that Defendant had not demonstrated genuine remorse or contrition for

---

5. This argument turns on the trial court judge's explanation of acceptance of responsibility as "kind of like ... redemption in the religious context, you know, you have to ac-

knowledge it and you have to seek forgiveness and you have to not want to do it anymore...." J.A. at 47.

her acts.[6] Defendant relies on *United States v. Lawson,* 751 F.Supp. 1350 (N.D.Ind.1990) for the proposition that "[t]he guidelines require only acceptance of legal responsibility ... not concession of the seriousness or moral wrongfulness of the offense conduct." *Id.* at 1356 n. 5. This statement does not accurately reflect the state of the law in either this circuit or the seventh circuit. This circuit has repeatedly held that both remorse and contrition are important factors in determining whether a defendant had demonstrated an acceptance of responsibility. *See Van Shutters,* 163 F.3d at 340–41; *United States v. Reed,* 951 F.2d 97, 100 (6th Cir. 1991). Moreover, other circuits have required a similar showing of remorse and contrition that indicates more than mere formalistic assertions of acceptance of responsibility. *See United States v. Gallant,* 136 F.3d 1246, 1248 (9th Cir.1998) (implicit in acceptance of responsibility is requirement that defendant demonstrate remorse or recognize moral wrongdoing); *United States v. Jones,* 52 F.3d 697, 701 (7th Cir.1995) (sentencing judge may look for "genuine remorse" or acceptance of personal responsibility in a moral sense). The sentencing judge's finding that Ragland had not accepted or even acknowledged the wrongfulness of her actions was fair inasmuch as the judge reasonably believed Ragland was being untruthful with the court at her sentencing. Thus, the trial court did not commit plain error in determining whether Ragland had fully accepted responsibility for her crimes.

For her final point, Ragland insists the trial court erred when it found that an acceptance of responsibility reduction was inconsistent with the obstruction of justice enhancement. Because this was only one of several findings on the trial court's part and because the other factors amply support the trial court's decision, we need not address this argument now.

## IV. Conclusion.

For all of the aforementioned reasons, we REVERSE the Defendant's conviction on COUNT 5, the multiplicitous perjury count, and VACATE the $100 special assessment imposed thereon. We AFFIRM the Defendant's sentence in all other respects.

---

6. The trial court noted: "It is one thing to be sorry that a person has been caught and another thing to be convinced that the conduct itself was wrong and should not be repeated. In this case, I agree with the United States that there is insufficient credibility on the part of Ms. Ragland to demonstrate that, in fact, she is sorry for anything other than the fact that she has been caught." J.A. at 36.